UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Michael Scott Keller | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Case No. 26-50423 |
| | ) | |

MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING MOTION
TO CONFIRM PENDING STATE ENFORCEMENT ACTION IS NOT
SUBJECT TO AUTOMATIC STAY

THIS MATTER came before the Court on the *Motion to Confirm Pending State Enforcement Action is Not Subject to Automatic Stay* filed by the State of North Carolina, *ex rel.*, North Carolina Department of Environmental Quality, Division of Waste Management and Division of Water Resources (Dkt. No. 16, the "Motion") and the related objection filed by the Debtor in this case (Dkt. No. 26, the "Objection"). On June 25, 2026, the Court entered an order granting the State's Motion and indicated that that it would supplement that order by later memorandum opinion. (Dkt. No. 31). The following constitutes the Court's findings of fact and conclusions of law with respect to that order.

I.     JURISDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11. This is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(G).

1

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This Debtor filed this case voluntarily under chapter 13 of the Bankruptcy Code on May 20, 2026. (Dkt. No. 1). Shortly thereafter, the State filed the instant Motion, along with a motion to reduce notice under Fed. R. Bankr. P. 9006(c) and its corresponding Local Rule, seeking an order from this Court confirming that the Bankruptcy Code's automatic stay does not apply to the State's "pending environmental compliance injunctive action," in which the Debtor is a named defendant. (Dkt. Nos. 16, 17). In its motion to reduce notice, the State asserted that the site central to that action "continues to discharge wastewater into waters of the State after virtually every rain event, impacting the State's waters as well as neighboring landowners." (Dkt. No. 17). The Court held a hearing on June 24, 2026, and entered an order granting the State's Motion the next day. (Dkt. No. 31).

The  Motion and the Debtor's related Objection center on a North Carolina state court proceeding initiated by the State more than a year prior to the commencement of this bankruptcy case.[1] That proceeding  (the "State Court Action") began with a complaint filed by the State against Carolina Composting Solutions, LLC ("CCS")—an entity with which the Debtor was purportedly substantially involved—seeking to remedy alleged violations of wastewater-related state environmental law at a site CCS maintained as a soil remediation facility (the "Site"). In April 2026, the State filed a verified amended complaint (the "Amended

---

[1] The Court takes judicial notice of the underlying state court proceeding, including the relevant amended complaint, which—in addition to being a public record—is attached as an exhibit to both parties' respective filings. (Dkt. Nos. 16, 26). The proceeding is Case No. 24CV001480-030, pending before the Superior Court in Anson County, North Carolina.

Complaint") for the purpose of including the Debtor and several other parties as defendants to the action. Roughly one month later, the Debtor filed this bankruptcy case.

The core relief sought by the State in the State Court Action is injunctive. As stated in the Amended Complaint:

> [The] action is commenced by the State of North Carolina against Defendants for the purpose of seeking injunctive relief to require all Defendants to (1) cease discharges of untreated wastewater to waters of the State in Anson County, including but not limited to an unnamed tributary to Flat Fork and an unnamed tributary to Cedar Creek; (2) to remediate the impacts of CCS's unlawful discharges; and (3) to comply with regulations that apply to the treatment of petroleum contaminated soils and the permit issued to CCS pursuant to those regulations.

(Dkt. No. 16, Ex. A, at 3). The prayer for relief includes requests for preliminary and permanent injunctions requiring the defendants to cease their allegedly unlawful activities at the Site and take immediate action to bring the Site into compliance with relevant environmental standards. (*Id.* at 31–34). It contains no request for damages. What is salient about the Amended Complaint in the context of this proceeding is that the State included allegations to support piercing the corporate veil between CCS and the Debtor so that, if successful, any resulting injunctive relief would be effective against the Debtor. (*Id.* at 25–29).[2] These allegations are at the heart of the Debtor's Objection in this matter.

According to the State, the inclusion of veil-piercing allegations in the Amended Complaint does not prevent the State Court Action from falling squarely

---

[2] The Amended Complaint also identifies a third entity, Alternative Energy Solutions of NC, LLC (AES), to which some of its veil-piercing allegations are relevant.

within the Bankruptcy Code's police and regulatory power exception to the automatic stay, found in 11 U.S.C. § 362(b)(4). In the alternative, it argues that any stay on the State Court Action should be lifted for cause under 11 U.S.C. § 362(d). The Debtor, on the other hand, asserts that the allegations supporting veil piercing in the Amended Complaint demonstrate that the State's inclusion of the Debtor in the State Court Action is motivated primarily by its own pecuniary interest in the Debtor's assets. He argues that the State Court Action—or at least those aspects of the action pertaining to piercing the corporate veil—remains subject to the automatic stay. For the following reasons, the State prevails.

## III.   DISCUSSION

### A.  The Police and Regulatory Power Exception to the Automatic Stay

The Bankruptcy Code provides that the filing of a petition operates as an immediate stay as to an array of actions creditors might normally pursue on account of prepetition claims against a petitioning debtor. 11 U.S.C. § 362(a); *see Houck v. Substitute Trustee Servs., Inc.*, 791 F.3d 473, 480–81 (4th Cir. 2015). This "automatic stay" on creditor activity is one of the fundamental protections afforded by the Bankruptcy Code, *id.*, and generally operates to channel such activity into the bankruptcy case for organized, efficient resolution. *See Dubois v. Atlas Acquisitions LLC (In re Dubois)*, 834 F.3d 522, 528 (4th Cir. 2016). The scope of the automatic stay includes

> the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title,

4

or to recover a claim against the debtor that arose before the
commencement of the case under this title.

11 U.S.C. § 362(a)(1). It also includes "any act to obtain possession of property of the
estate or of property from the estate or to exercise control over property of the
estate." *Id.* § 362(a)(3). These provisions function to protect debtors and the
bankruptcy estate from litigation outside of the bankruptcy court, such as state
court litigation, during the pendency of a bankruptcy case.

Though the automatic stay is expansive in reach, the Bankruptcy Code
provides numerous exceptions to its application, one of which is central to this
matter. *Id.* § 362(b). A bankruptcy petition does not operate as a stay

under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of
the commencement or continuation of an action or proceeding by a
governmental unit . . . to enforce such governmental unit's . . . police
and regulatory power, including the enforcement of a judgment other
than a money judgment, obtained in an action or proceeding by the
governmental unit to enforce such governmental unit's . . . police or
regulatory power.

*Id.* § 362(b)(4). This "police and regulatory power exception" balances the
Bankruptcy Code's preference for addressing debtors' obligations in a single forum
with governmental units' legitimate interest in public welfare by "ensur[ing] that
government agencies can still enforce laws 'affecting health, welfare, morals and
safety' and that debtors are not automatically protected in bankruptcy court from
such regulatory laws," *Milk Indus. Regul. Off. v. Ruiz (In re Ruiz)*, 122 F.4th 1, 13
(1st Cir. 2024) (citing *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297
(9th Cir. 1997)), while preventing the enforcement of money judgments from
interfering with the orderly administration of a bankruptcy estate.

Determining whether this exception applies is not always straightforward. The Fourth Circuit has explained:

> The difficulty in applying this exception comes in distinguishing between situations in which the state acts pursuant to its "police and regulatory power" and situations in which the state acts merely to protect its status as a creditor. To make this distinction, we look to the purpose of the law that the state is attempting to enforce. If the purpose of the law is to promote "public safety and welfare," *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997), or to effectuate public policy, then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," [*id.*], or to adjudicate private rights, then the exception is inapplicable. The inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case.

*Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001) (citation modified). Since many laws have multifaceted purposes, the task of a court deciding whether this exception applies is to "determine the *primary* purpose of the law that the state is attempting to enforce." *Id.* (citations omitted).

In the context of applying the police and regulatory power exception to environmental laws, particularly when cleanup costs are sought, "courts often focus on whether deterrence is the primary purpose of the law" at issue. *Id.*; *see United States v. Nicolet, Inc.*, 857 F.2d 202, 210 (3d Cir. 1988) (holding that the police and regulatory power exception applied to the EPA's pursuit of environmental cleanup costs against a debtor under CERCLA because, in part, it ensured that "responsible parties will be held accountable for their environmental misdeeds."); *New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991) ("[G]overnmental actions under CERCLA to recover costs expended in response to completed environmental

6

violations are not stayed by the violator's filing for bankruptcy.").[3] A law intended to deter environmental misconduct qualifies paradigmatically as one with a purpose of promoting "public safety and welfare." *See Safety-Kleen, Inc. (Pinewood)*, 274 F.3d at 865; *Penn Terra, Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 274 (3d Cir. 1984).

Even when environmental cleanup costs are not directly pursued in an enforcement action, courts recognize that a debtor's compliance with an order requiring environmental remediation—frequently the object of such actions—may entail significant expenditures by the debtor. *See, e.g., Penn Terra*, 733 F.2d at 277–78. This possibility sometimes complicates an evaluation of the "exception to the exception," that is, whether an action or proceeding counts as one to enforce a "money judgment." 11 U.S.C. § 362(b)(4). Many courts, including the Fourth Circuit, however, have reasoned that the fact a state action requires—or may require—a debtor to make an expenditure does not mean that the police and regulatory power exception is inapplicable. *Safety-Kleen, Inc (Pinewood)*, 274 F.3d at 865 (citing *Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.)*, 805 F.2d 1175, 1186 (5th Cir. 1986); *Penn Terra*, 733 F.2d at 277–78 ("Were we to find that any order which requires the expenditure of money is a 'money judgment,' then the exception . . . which should be construed broadly, would instead be narrowed into virtual nonexistence.). *See generally* 3 Collier on Bankruptcy ¶ 362.05[5][b][iii]

---

[3] The 1998 amendment to 11 U.S.C. § 362(b)(4) combined what were previously two provisions ((b)(4) and (b)(5)) into a single exception. That amendment functioned primarily to expand the scope of the exception. As demonstrated by *Safety-Kleen, Inc. (Pinewood)*, 274 F.3d at 865, widely accepted judicial analysis regarding the pre-amendment exception in the context of environmental actions generally continues to stand to reason.

(16th ed.). Consequently, such circumstances do little to change analysis under the exception.

Here, the State seeks an order confirming that the police and regulatory power exception applies to the State Court Action.[4] That action is grounded in N.C. Gen. Stat. § 143-215.1(a)—North Carolina's "primary statute for enforcing the Clean Water Act's prohibition of unpermitted discharges," various related water quality standards promulgated by the State under N.C. Gen. Stat. § 143-214.1, and the State's capacity to obtain injunctive relief under N.C. Gen. Stat. § 143-215.6C. (Dkt. No. 16, Ex. A, at 4–10). Injunctive enforcement proceedings under these statutes are instituted by the Attorney General on behalf the North Carolina Department of Environmental Quality (DEQ), an agency tasked with administering "a complete program of water and air conservation, pollution abatement and control and . . . achiev[ing] a coordinated effort of pollution abatement and control with other jurisdictions." N.C. Gen. Stat. §§ 143-211, 143-215.6C. As a matter of public policy, water quality standards promulgated by the DEQ are designed

> to protect human health, to prevent injury to plant and animal life, to prevent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage the expansion of employment opportunities, to provide a permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

---

[4] The Debtor does not dispute, and it is plain to the Court, that the State of North Carolina is a "governmental unit" as defined by the Bankruptcy Code and contemplated by the police and regulatory power exception. 11 U.S.C. §§ 101(27), 362(b)(4).

8

*Id.* § 143-211 ("Declaration of public policy."). When these standards are violated or a violation is threatened, the State is empowered to seek injunctive relief "necessary to prevent or abate the violation or threatened violation." *Id.* § 143-215.6C.

Given this context and the content of the Amended Complaint, the Court finds that the primary purpose of the laws the State seeks to enforce in the State Court Action is—consistent with the North Carolina General Assembly's declaration of public policy—"to promote public safety and welfare" and "effectuate public policy." *Safety-Kleen, Inc (Pinewood)*, 274 F.3d at 865. Additionally, much like the EPA's CERCLA action to recover environmental cleanup costs in *Nicolet*, 857 F.2d at 210, and South Carolina's action to enforce financial assurance requirements in *Safety-Kleen, Inc.*, 271 F.3d at 866, the State's enforcement proceeding here—which will potentially obligate the defendants to expend funds to remediate alleged environmental violations—represents an important deterrence element in the context of environmental regulation by "ensuring that responsible parties will be held accountable for their environmental misdeeds." *Id.* (citing *Nicolet*, 857 F.2d at 210). Consequently, the State Court Action falls squarely within the Bankruptcy Code's police and regulatory power exception to the automatic stay. *See In re Laurinburg Oil Co.*, 49 B.R. 652 (Bankr. M.D.N.C. 1984) (holding that under the pre-amendment version of the police and regulatory power exception, "the automatic stay provisions of 11 U.S.C. § 362(a)(1) and (2) will not operate to stay [North Carolina] from commencing a civil injunctive action and enforcing a

judgment obtained therein . . . to abate violations of the State water pollution laws.").

The Debtor "does not contest that the State's environmental enforcement action, specifically the injunctive claims directed at CCS requiring cessation of discharges and remediation of the site may fall within the exception of 11 U.S.C. § 362(b)(4)." (Dkt. No. 26, ¶ 8). The Objection instead presents arguments that the inclusion of "veil-piercing claims"[5] in the Amended Complaint relating to the Debtor and a corporate defendant renders at least part of the State Court Action subject to the automatic stay because those "claims against the Debtor are pecuniary in purpose." (*Id.* ¶ 10). The Debtor contends, for example, that "[t]he sole purpose of the veil-piercing claims against the Debtor is to reach his assets to fund CCS's remediation obligations," (*id.*), and that the State "did not add the Debtor [to the action] because his conduct required regulatory intervention but rather because CCS could not pay." (*Id.* ¶ 12.). In service of this argument, he points out that "[t]he State acknowledges that CCS 'has represented that it does not have sufficient funds to remedy the significant noncompliance at the Site' and that it is pursuing the Debtor personally because he and AES 'have additional capital or other assets that could be used to remedy the violations.'" (*Id.* ¶ 10) (quoting the Amended Complaint at 25, 29). In other words, he asserts that the practical effect of piercing the corporate veil would be "to impose a monetary obligation on the debtor." (*Id.* ¶ 9). The Debtor is perhaps best understood to make two distinct arguments here. First,

---

[5] Though identified as such by the Debtor, the Amended Complaint does not include separate "claims" for piercing the corporate veil.

that the "veil-piercing claims" constitute a distinct aspect of the Amended

Complaint to which a primarily pecuniary purpose can be attributed under the

framework set forth in *Safety-Kleen, Inc.* and which is therefore subject to the

automatic stay. Second, that the inclusion of the "veil-piercing claims" in the

Amended Complaint demonstrates that the State's interest in subjecting the Debtor

to the enforcement action is primarily pecuniary, and the action against him is

therefore subject to the stay. Neither argument prevails.

Regarding the first argument, under North Carolina law—which governs

the State Court Action—"[t]he doctrine of piercing the corporate veil is not a theory

of liability. Rather, it provides an avenue to pursue legal claims against corporate

officers or directors who would otherwise be shielded by the corporate form." *Green

v. Freeman*, 749 S.E.2d 262, 271 (N.C. 2013). In other words, the State's allegations

regarding the Debtor's relationship to corporate defendants in the State Court

Action do not constitute independent legal claims against the Debtor, they simply

function as an "avenue" for the application of the State's core environmental claims

to the Debtor—an allegedly responsible party.[6] *See Id.* Therefore, they should not be

evaluated independently under the *Safety-Kleen, Inc.* framework; instead, the

primary purpose of the law *for which enforcement is sought*—the environmental

claims and injunctive relief—governs. *See Safety-Kleen, Inc. (Pinewood)*, 274 F.3d at

865.

---

[6] The underlying claims are (1) unlawful discharge, (2) violations of water quality standards, and (3) permit violations. (Dkt. No. 16, Ex. A, at 29–30). These claims are paired with a request for preliminary injunctive relief. (*Id.* at 30–31).

11

As to the second argument, the Fourth Circuit made clear in *Safety-Kleen, Inc.* that the relevant inquiry in this context is objective: "we examine the purpose of the law that the state seeks to enforce *rather than the state's intent in enforcing the law in a particular case.*" *Id.* (emphasis added). The Debtor's allegations, for example, that "[t]he sole purpose of the veil-piercing claims against the Debtor is to reach his assets to fund CCS's remediation obligations," and that "the State did not add the Debtor because his conduct required regulatory intervention but rather because CCS could not pay," may be suggestive of the State's subjective intent in adding the Debtor to the State Court Action, (Dkt. No. 26, ¶¶ 10, 12), but do not impact an objective analysis of the purpose of the underlying law. Even if the State's subjective intent, as alleged in the Objection, were somehow relevant, it would not support the Debtor's desired outcome. The fundamental question behind the purpose inquiry in the context of the police and regulatory power exception is whether the State acts "pursuant to its 'police and regulatory power'" or "merely to protect its status as a creditor." *Safety-Kleen, Inc. (Pinewood)*, 274 F.3d at 865. The State's interest in ensuring funds are available for prospective environmental remediation requirements stemming from the State Court Action reflects its role as a regulator and defender of public welfare, not that of a private creditor of the Debtor. The State makes clear in the Motion, and reiterated at the hearing, that it views the Debtor as the party primarily responsible for the environmental violations alleged in the Amended Complaint. (Dkt. No. 16, ¶¶ 1–5).

12

For the foregoing reasons, the Court found that the entirety of the State Court Action, which seeks only injunctive relief, falls within the police and regulatory power exception to the automatic stay. (Dkt. No. 31).[7]

B. <u>Relief from Stay Under the *Robbins* Factors</u>

Even if the State Court Action were not covered by the police and regulatory power exception to the automatic stay, cause would exist to grant the State's alternative request for relief from the stay under 11 U.S.C. § 362(d)(1). Section 362(d)(1) provides simply that the stay may be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). Because the Bankruptcy Code does not define what constitutes "cause" to lift the stay, "courts must determine when discretionary relief is appropriate on a case-by-case basis." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992) (citing *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985)).

In *In re Robbins*, the Fourth Circuit established three factors for courts to consider when deciding whether cause exists to lift the automatic stay as to litigation pending outside of the bankruptcy court:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

---

[7] The State reiterated at the hearing that the State Court Action seeks only injunctive relief, not money damages, and agreed that to the extent the State ever sought money damages from the Debtor, further appropriate relief from this Court would be necessary.

13

*Id.* The first *Robbins* factor favors stay relief. While this Court is no stranger to veil piercing allegations, they are evaluated under doctrines of state law, and the Court's expertise is therefore unnecessary. The second factor also weighs in favor of lifting the stay. The Debtor does not dispute that State's environmental enforcement action against CCS, falls within the police and regulatory power exception, and separating the veil-piercing allegations from the Amended Complaint to be heard by the bankruptcy court would be difficult, inefficient, and impractical. Lastly, as to the third factor, the State has already indicated, and the Amended Complaint is clear on its face, it does not seek a money judgment against the Debtor. If one results from the State Court Action, enforcement thereof will require further relief from this Court. Therefore, Court finds this factor also weighs in the State's favor.

This, the 14th day of July, 2026.

_____

Lena Mansori James
United States Bankruptcy Judge

14

PARTIES TO BE SERVED

Michael Scott Keller

Case No.  26-50423

John Paul Hughes Cournoyer, Bankruptcy Administrator
*via cm/ecf*

Brandi Richardson, Chapter 13 Trustee
*via cm/ecf*

Taylor Hampton Crabtree on behalf of Movant State of North Carolina
*via cm/ecf*

Christopher D Layton on behalf of Debtor Michael Scott Keller
*via cm/ecf*

Richard Abbitt Prosser on behalf of Creditor Truist Bank
*via cm/ecf*